IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| *Plaintiff,* | § § | |
| v. | § § | No. SA-14-CR-87-XR |
| JUAN MANUEL MEDRANO-MARTINEZ, | § § | |
| *Defendant.* | § § § | |

**ORDER**

On this day, the Court considered Defendant's motion to suppress. Doc. No. 28. After careful consideration, the motion is DENIED.

**BACKGROUND**

Defendant Juan Manuel Medrano-Martinez is charged in the indictment with illegal reentry to the United States in violation of 18 U.S.C. §§ 1326(a) & (b)(2). On January 6, 2014, Mr. Medrano-Martinez was arrested while riding as a passenger in a vehicle that was stopped by officers from Immigration and Customs Enforcement ("ICE"). After an investigation, it was determined that Mr. Medrano-Martinez was in the United States illegally and had a prior felony conviction, thereby rendering him in violation of 18 U.S.C. § 1326(b)(2). The circumstances surrounding Mr. Medrano-Martinez's arrest is the subject of this motion to suppress.

Pursuant to their internal procedures for identifying targets of interest, ICE officers were searching for a Mr. Juan Hernandez-Garcia when they set up surveillance outside of a

1

home located at 704 Viendo, San Antonio, Texas.  The ICE officers had obtained information from Comal County authorities that Mr. Hernandez-Garcia had provided the 704 Viendo address when issued a traffic ticket a year earlier.[1]  During the course of the surveillance, a Chevrolet Silverado pickup truck arrived to the house and three individuals emerged from the house and drove away in the pickup truck.  The ICE officers erroneously believed that that one of the individuals who emerged from the house was Mr. Hernandez-Garcia.  Based upon this belief, the officers followed the car a short distance before pulling it over without incident.

To ensure officer safety, four ICE officers approached the vehicle simultaneously from both sides.  The officers then asked the occupants for identification. All produced Mexican consular identification cards.  At this point, it is not clear whether the ICE officers knew that Mr. Hernandez-Garcia was not present in the vehicle. Nevertheless, all four occupants were questioned on whether they had documentation permitting them to be lawfully present in the United States.  The driver of the vehicle was released when he provided documentation indicating his lawful presence in the country.  The three other occupants, however, were arrested and taken to the ICE field office for processing.  During routine finger printing, it was discovered that Mr. Medrano-Martinez had previously been deported and convicted in the United States of a felony.  Defendant was thereafter read his *Miranda* rights in Spanish and made a voluntary statement in which he confessed to being a felon that had been previously deported.  On June 4, 2014, Mr. Medrano-Martinez filed this motion to suppress his identity because, he claims, he was subject to an illegal seizure.  Doc. No. 28.  The Court held an evidentiary hearing on July 23, 2014.  On July 30, 2014, Defendant filed an additional

---

[1] Although the testimony on this point was not entirely clear, it appears as though Mr. Hernandez-Garcia came to ICE's attention while conducting routine searches of arrest records for deportable aliens.

memorandum in support of his motion to suppress, which the Court has reviewed. Doc. No. 41.

## DISCUSSION

The parties agree that the legality of the stop should be determined by applying the framework established in *Terry v. Ohio*, 392 U.S. 1 (1968). "It is now well-established that law enforcement officers may briefly detain pedestrians and motorists in public, even without probable cause to arrest them, so long as the officers have reasonable suspicion to believe that criminal activity is afoot." *United States v. Ibarra-Sanchez*, 199 F.3d 753, 758 (5th Cir. 1999) (internal citation omitted). The government bears the burden of showing that reasonable suspicion for the stop existed. *See United States v. Nuefield-Neufield*, 338 F.3d 374, 378 (5th Cir. 2003).

In this case, the government has established that it had reasonable suspicion for the initial stop of the vehicle. At the evidentiary hearing on this motion, ICE agent Patrick Llanes testified that he, along with three of his colleagues, believed that suspected criminal Mr. Hernandez-Garcia was traveling in the subject vehicle. Agent Llanes further testified that this belief was based upon: 1) the fact that Mr. Hernandez-Garcia gave the 704 Viendo address as his residence; and (2) a close similarity between the physical descriptions of Mr. Hernandez-Garcia and the physical appearance of an individual who exited the house and entered the vehicle.[2] The fact that the agents were ultimately mistaken in their identification of the individual entering the vehicle does not change the analysis. A belief can be objectively reasonable even when ultimately incorrect. *See United States v. De Leon-Reyna*, 930 F.2d

---

[2] This individual was Defendant's brother, Jorge Medrano-Martinez.

396, 399 (5th Cir. 1991)(applying good-faith exception to exclusionary rule in the context of *Terry* stops).

At the evidentiary hearing, Defendant's counsel advanced the argument that, even if the initial stop was legal, the ICE officers should only have questioned the individual that they believed to be Mr. Hernandez-Garcia. A *Terry* stop must "last no longer than necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." *United States v. Andres*, 703 F.3d 828, 833 (5th Cir. 2013) (internal quotations omitted). Defendant does not provide any support for the proposition that the *Terry* stop become unlawful when all occupants of the vehicle were asked to present identification. On the contrary, Agent Llanes testified that it is standard procedure to identify all occupants of a vehicle that is stopped to ensure officer safety. This procedure is objectively reasonable. *See Pennsylvania v. Mimms*, 434 U.S. 106 (1977) ("[W]e have specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile").

Moreover, the Fifth Circuit has squarely held that "within the legitimate scope of the stop were the registration and license checks that [the officer] then initiated on the vehicle *and its occupants.*" *United States v. Brigham*, 382 F.3d 500, 509 (5th Cir. 2004) (emphasis added). Thus, there appears to be no merit in the contention that the officers were not entitled to ask for Defendant's identification simply because he was not originally the targeted individual. If this understanding of *Terry* was accurate, then an officer could only question the driver of a vehicle pulled over for a traffic violation inasmuch as only the driver could be considered the originally-targeted individual. Neither precedent nor considerations of practicality support such a restrictive reading of *Terry*. If a vehicle is stopped for a traffic violation, courts

routinely permit passengers to be arrested for offenses which become apparent to the officer during the course of routine questioning. *See e.g. United States v. Shabazz*, 993 F.2d 431, 436 (5th Cir. 1993)(permitting questioning that led to the discovery of illicit contraband in a routine traffic stop).

Furthermore, once a foreign ID was produced by an individual who did not speak English, reasonable suspicion arose that Defendant was a foreign national. Immigration officers are entitled by statute to ask those they believe to be citizens of a foreign power about their immigration status. *See* 8 U.S.C. § 1357(a) (Granting immigration officers power to question a "person believed to be an alien as to his right to be or to remain in the United States."). Thereafter, when Defendant indicated that he had no lawful basis to be in the U.S., probable cause arose to detain him for immigration violations. Accordingly, Defendant's Fourth Amendment rights were not violated by the stop, and he is not entitled to suppression.

Defendant next argues that he made statements during a custodial interrogation prior to receiving his *Miranda* warnings, and that these statements must be suppressed under *Missouri v. Seibert*, 542 U.S. 600 608 (2004). *See* Doc. No. 41. Even assuming, for the sake of argument only, that the statements Defendant made prior to being Mirandized were incriminating and in the course of a custodial interrogation, well settled Fifth Circuit precedent dictates that evidence of identity is not suppressible.[3] *See I.N.S. v. Lopez–Mendoza*, 468 U.S. 1032 (1984); *United States v. Roque-Villanueva*, 175 F.3d 345 (5th Cir. 1999); *United States v. Pineda- Chinchilla*, 712 F.2d 942 (5th Cir. 1983). Defendant candidly recognizes that the law of this Circuit is contrary to his position regarding the suppression of an alien's identity.

---

[3] Defendant relies on *United States v. De La Cruz*, 703 F.3d 1193 (10th Cir. 2013), to support the propositions that the initial seizure was illegal and that identity evidence is suppressible. *See* Doc. No. 41. While the Court acknowledges the factual similarities between *De La Cruz* and this case, it is, as Defendant candidly acknowledges, not at liberty to apply a Tenth Circuit case in the face of contrary Fifth Circuit precedent.

Doc. No. 28 at 3-4.  In *United States v. Hernandez-Mandujano*, 721 F.3d 345, 351 (5th Cir. 2013), Judge Jolly expressed reservations about the Fifth Circuit's application of *Lopez-Mendoza* and noted that other circuits allow suppression of identity evidence under certain circumstances.  *Id.* at 351-352.  Although the Supreme Court denied a petition for a writ of certiorari in *Hernandez-Mandujano*, Defendant states his intention to have this issue resolved by that Court.  Doc. No. 28.  Regardless, the Court is duty bound to apply the law as it currently exists in this Circuit, which, as Judge Jolly notes in his concurrence, provides that identity evidence is not suppressible. *Hernandez-Mandujano*, 721 F.3d at 751.

## CONCLUSION

In light of the foregoing analysis, Defendant's motion to suppress is DENIED.  Doc. No. 28.

SIGNED this 1st day of August, 2014.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE